May it please the court, my name is Harvey P. Sackett. I appear this morning with Emily L. Wang. I represent John A. Jamieson, plaintiff and appellant in this matter. I wish to reserve two minutes for rebuttal. This case involves Jamieson's claim for social security disability insurance benefits. Jamieson submits that the decision by the administrative law judge not only necessitates reversal, but additionally warrants remand for the immediate payment of benefits. Jamieson raised three main issues in his opening brief. This morning I'd like to focus on one area in particular, specifically the administrative law judge's findings regarding Jamieson's physical residual functional capacity as well as his mental residual functional capacity. Most critically, the administrative law judge placed outcome-determinative reliance on the opinion of a non-examining, non-treating state agency examiner who completed a check box form. He did so in lieu of the residual functional capacity assessment from Dr. Cunnington, Jamieson's primary care physician. How did the ALJ purportedly reach this conclusion? He premised his conclusion on several reasons. Number one, he stated that he found Dr. Cunnington's RFC assessment to be inconsistent with the medical evidence of record, and number two, he stated that he did the same with the mental RFC assessment. I'll get to that shortly. The record doesn't support that finding. Dr. Cunnington noted diagnoses of occipital neuralgia and cervical degenerative disc disease. During the course of Jamieson's treatment, Dr. Cunnington referred Jamieson to a variety of physicians, including a neurologist at Stanford, several other specialists. They all came to the same conclusion. They all diagnosed Jamieson as suffering from severe left occipital neuralgia and cervical disc disease. Ultimately, Dr. Cunnington's RFC assessment was not singular, but rather it was consistent with all the other specialists to whom he had referred Jamieson. As such, his conclusion, meaning the ALJs, that Jamieson's ability, based on Dr. Cunnington's assessment, was inconsistent and extreme, simply doesn't hold water. Did either of the non-examining, non-treating physicians the ALJ relied upon ever see your client? No, Your Honor. Judge Hawkins, these are state agency evaluators. The files are sent to them for their review. They merely look at the paper file and make an assessment. Do they have medical records available to them? In this particular case, Your Honor, it's not clear from the Jukbok form what records were before them. I do know, however, that in terms of the timeline, that neither Dr. Torre, who completed the physical RFC, or Dr. Torre, he did not have Dr. Cunnington's RFC assessment. His opinion predated Dr. Cunnington's assessment by several years. So I can't say what exactly he reviewed. In other words, it's not clear from the record. And consistent with Lester and his progeny, most recently Orn and Ryan, in cases like this, difference has to be given to the opinion of the treating physician. The ALJ did not provide specific legitimate reasons for doing so, assuming that there is, in fact, a conflict. Secondly, the administrative law judge gave an outcome-determinative weight to the checkbox form of Dr. Ikawa. Again, this is a physician who did not see Jamison. He merely looked at the file and checked off the box and concluded that his mental impairment was non-severe. Now, Dr. Mortallaro was a consultative psychologist. Jamison was referred to him by Dr. Oliveri, one of the neurologists that Jamison had seen. He conducted and wrote an extensive consultative psychological evaluation. He concluded in no uncertain terms that Jamison suffered from chronic pain syndrome. Specifically, he noted that Jamison had significant deficits in various functional areas. At the conclusion of his report, he stated that Jamison was in need of significant psychotherapy. Now, for reasons unknown, the ALJ simply said that, again, he found Dr. Mortallaro's opinion to be extreme and inconsistent with the record. And he gave outcome-determinative weight to, again, the checkbox evaluation of the state agency evaluator. He didn't say why, other than saying that he felt that the report from Dr. Mortallaro was extreme. Finally, the ALJ rejected Jamison's complaints. He found problems with his recital of symptomatology. He said they were inconsistent with the record. One of the things that he noted was that, were the testimony at the ALJ hearing from your client about his pain, was it inconsistent with what he had told his own treating physicians? Absolutely not, Judge Hawkins. It was completely consistent. And if you read all of the recitals from the various physicians to whom Jamison had been referred, the physician at Stanford, Dr. Oliveri, Dr. People, all of them were absolutely consistent. There's no inconsistencies whatsoever. And Dr. Martellaro, the psychologist, said that there was no evidence whatsoever of feigning or malingering. And none of the physicians who evaluated Jamison on the physical side ever said that there were inconsistencies in his recital of the subjective complaints. There's a timeline and a consistency throughout. One of the reasons why the ALJ claimed that he rejected Jamison's subjective complaints was because he said that an individual as disabled as Jamison claimed to be should have been getting greater treatment. Now, he never said what that treatment should be. And yet, when we look at the record, Jamison, in fact, received a great deal of treatment. Following the injury, he underwent physical therapy for five months. He had not one, but two nerve blocks, and he was in critical condition. He was in critical condition for a period of time, and he was in critical condition for a period of time. He was prescribed significant codeine-based medications, including Lortab, Neurontin, and Percodan. And, ultimately, he went to Stanford, and they implanted a nerve stimulator, from which he didn't get very much relief, if any. So how the ALJ could reach this conclusion, given this litany of treatment, is problematic. I'm going to reserve the benefit of the moment. Thank you, Your Honor. If it is true, the statements of Jamison and accept as true Dr. Cunnington's opinions, would the ALJ have been required to find Jamison disabled? The answer, again, is very much yes. And finally, if we look at the progeny of Ninth Circuit case law, which has addressed this question, the cases have shown a great sensitivity to claimants who have been in dispute with the commissioner for a lengthy period of time. This gentleman was injured in May 2003. It's now June 2009. If this case is not reversed and remanded, but rather sent back for an additional administrative hearing, he may very well not have another hearing for 12 to 18 months. And I think that factor, coupled with the other things that I've noted, clearly warrant reversal for the immediate payment of benefits. Thank you, Your Honors.
judges: Hug, Fletcher B. , Hawkins